**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. Case Nos. 25-cr-100-KWR
21-cr-793-KWR

RICHARD SCHUYLER
KUYKENDALL,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendant's Motion for Compassionate Release filed in both cases identified in the caption. ***See* Def.'s Mot. Compassionate Release, *United States v. Kuykendall,* Case No. 1:21-cr-00793 KWR (D.N.M. Jul. 3, 2026), Doc. 230; Def.'s Mot. Compassionate Release, *United States v. Kuykendall,* Case No. 1:25-cr-00100 KWR (D.N.M. Jul. 3, 2026), Doc. 32**.[1] Defendant seeks compassionate release, a sentence reduction to time served, and modification of his terms of release to include medical treatment and a sober living arrangement under 18 U.S.C. § 3582. Having reviewed the record and applicable law, the Court finds that Defendant's motion is not well taken and, therefore, is **DENIED**.

**BACKGROUND**

Defendant pled guilty to Felon in Possession of a Firearm and Ammunition and was sentenced to thirty-seven (37) months' imprisonment on June 26, 2025. **Def.'s Judgment, Doc. 28 at 1–2; *see* 18 U.S.C. § 922(g)**. The instant offense occurred on September 26, 2024, while Defendant was absconding from supervised release for a previous felony offense. **Final PSR, Doc. 13 at ¶ 11**. Defendant had been declared an absconder thirteen days earlier, and the United States

[1] Unless noted otherwise, the Court cites to the filings in Case No. 1:25-cr-00100 KWR.

Marshal's Service ("USMS") had obtained a search warrant for a hotel in Albuquerque to locate and apprehend him. ***Id.*** When USMS attempted to execute the search warrant, Defendant "discharged a firearm and threatened police while he barricaded himself in a hotel room." ***Id.* at ¶ 21**. The incident lasted seven hours before the USMS was finally able to arrest Defendant. ***Id.* at ¶ 20**.

Defendant arrived at BOP custody in Oklahoma on August 1, 2025, and was transferred to Federal Correctional Institution ("FCI") Florence in Colorado on August 4. **Gov't.'s Response Mot. Compassionate Release, Doc. 33, Ex. 1 (Quarter History)**. Defendant arrived at FCI Florence in pain, still suffering from a 2023 motor vehicle accident which had fractured his left leg. **Def.'s Judgment at 2**. Defendant saw medical staff on August 13, nine days after arriving at FCI Florence. **Gov't.'s Response, Ex. 2 (BOP Clinical Encounters) at 73**. He described his pain as "dull," and as a "2" on a 10-point scale. ***Id.* at 44**. But because medical staff recorded a "deformity of the left tibia bone," ***id.* at 66**, Defendant was referred to radiology, where his leg was x-rayed on August 21, ***id.* at 158**. According to the x-ray results, Defendant had a "varus angular deformity of the left knee," and "chronic posttraumatic osseous deformity of the proximal left tibia," but no "acute fracture," nor "joint space misalignment," and only "minimal degenerative joint changes." ***Id.* at 158**.

The results were sufficiently serious that Defendant was referred to an orthopedic surgeon on August 29. ***Id.* at 42**. When Dr. Patterson, the orthopedist, reviewed Defendant's condition on November 4, he largely confirmed the results of the x-ray, concluding that Defendant had a "severe deformity of the tibia," and that he suffered from "[a]dvanced posttraumatic degenerative joint disease," but that the original fracture from the 2023 accident was healed. ***Id.* at 153**. Dr. Patterson

explained that Defendant's condition "could only be salvaged with a complicated knee replacement type surgery." ***Id***.

On the same day, November 4, Defendant's left hand was x-rayed after he sustained a fall. ***Id*. at 27**. The results were sent to an orthopedist by November 19, ***id*. at 25**, and he met with a provider on January 12, 2026, ***id*. at 145–48**. He was diagnosed with a "healing fracture" in his third metacarpal. ***Id*. at 147**. The doctor recorded his pain as "mild," with "a severity of a 2/10." ***Id*. at 146**. After "treatment options were discussed at length with [Defendant]," Defendant and his doctors agreed to a "conservative treatment" plan that did not include surgery. ***Id*. at 145**.

Defendant's leg was x-rayed again on March 16, 2026. ***Id*. at 141**. Comparing the images to those taken in August 2025, the radiologists observed that there was still "no acute fracture [nor] joint space misalignment," and that both the varus deformity and degenerative condition of his left knee were "stable." ***Id***. On April 7, Defendant was seen again by a provider for his left leg. ***Id*. at 14**. This time he reported a "shooting" pain of "7" on a 10-point scale. ***Id***. The provider indicated that he should be evaluated for possible surgery. ***Id***.

The Court is not aware of any subsequent evaluation, nor any update to the recommendations for either his hand or his leg. The record indicates that the last time Defendant visited medical staff at FCI Florence on July 1, 2026, neither his hand nor leg injuries were listed as complaints. ***See id*. at 1–2**.[2]

---

[2] Other than his leg and hand injuries, the only other potentially relevant treatment Defendant has received concerns his opioid use disorder. Defendant was referred to BOP's Residential Drug Abuse Program ("RDAP") on August 18, 2025. **Gov't.'s Response, Ex. 3 (Drug Programs listing)**. He remains on the waiting list. ***Id***. He has been enrolled in the Medication Assisted Treatment Plan since August 20 and meets regularly with psychology staff. ***Id***. His mental health and treatment goals are evaluated regularly as part of this program. ***See, e.g.*, Gov't.'s Response, Ex. 2 at 1, 5–6**.

FCI Florence is a Medium Security Level and medical Care Level 2 facility. **Def.'s Mot. Compassionate Release, Ex. 2 (Baird Declaration), at 4**. This means that it is not equipped to handle some prisoners' complex surgical needs, which are better met by medical Care Level 3 and 4 facilities. ***Id.* at 4–5**; *see also See Care Level Classification For Medical Conditions or Disabilities, October 2025*, FEDERAL BUREAU OF PRISONS, at 5.[3] Within two months of Defendant's arrival at FCI Florence, medical staff designated him at a Care Level 2, which has remained his designation ever since. **Gov't.'s Response, Ex. 6 (Care Level History)**.

Defendant seeks compassionate release on the grounds that FCI Florence is "not equipped to meet his complex surgical needs" and that, as a result, he will be subjected to "years of untreated suffering." ***Id.* at 2**. According to Defendant, "[h]e lives in daily pain and faces the prospect of amputation if treatment is further delayed, . . . ." **Def.'s Mot. Compassionate Release at 2**. The United States objects, arguing that Defendant's circumstances are not "extraordinary and compelling" because he is receiving the care and treatment that he needs. **Gov't.'s Response at 6–8**. The United States requests that the Court deny the motion. ***Id.* at 8**.

**ANALYSIS**

Generally, "a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)). However, Congress has provided a limited exception to this rule and allowed for certain "compassionate release" sentence modifications under 18 U.S.C. § 3582(c)(1)(A).

The Court may not reduce a sentence under this provision unless Defendant administratively exhausts his request and three other requirements are met: (1) the Court finds that

[3] https://www.bop.gov/resources/pdfs/care_level_classification_guidance_102025_final.pdf (last accessed, Oct. 2, 2026).

extraordinary and compelling reasons warrant such a reduction; (2) the Court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the Court considers the factors set forth in § 3553(a), to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A); *United States v. McGee*, 992 F.3d 1035 (10th Cir. 2021). "[D]istrict courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Id.* at 1043 (internal citation omitted). After carefully considering the circumstances of Defendant's custody at FCI Florence, the Court finds that Defendant's medical circumstances warrant a sentence reduction.

**I. Administrative Exhaustion was not raised by the United States**

As an initial matter, the United States does not argue that the Court should deny or dismiss Defendant's Motion for lack of administrative exhaustion. The first step of § 3582(c)(1)(A) "requires exhaustion before a court may consider a motion for compassionate release." *United States v. Hemmelgarn*, 15 F.4th 1027, 1030 (10th Cir. 2021); *United States v. Hurtado*, No. CR 15-1506 JB, 2024 WL 4827724, at *8 (D.N.M. Nov. 19, 2024). A defendant satisfies this requirement if (i) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (ii) thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

A defendant bears the burden to prove exhaustion. *United States v. Hemmelgarn*, 15 F.4th 1027, 1029 (10th Cir. 2021). However, the administrative exhaustion requirement may be waived or forfeited by the Government if it does not invoke it. *Id.* at 1330-31. Here, the United States did not expressly raise administrative exhaustion as a reason to deny the motion, proceeding directly to the substance of Defendant's claim under 18 U.S.C. § 3582(c)(1)(A). ***See generally*** **Gov't.'s Response**. Accordingly, the Court proceeds to the rest of the 18 U.S.C. § 3582(c)(1)(A) analysis.

## II. **<u>Defendant has not demonstrated Extraordinary or Compelling Circumstances warranting Compassionate Release</u>**

The circumstances detailed in Defendant's Motion do not give rise to extraordinary and compelling reasons to warrant a sentence reduction.

The Sentencing Commission's policy statements list possible circumstances giving rise to extraordinary and compelling reasons justifying a sentence reduction. As relevant here, the Defendant grounds his argument in two circumstances. The first is met if Defendant "suffer[s] from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility from which [he] is not expected to recover . . . ." U.S.S.G. § 1B1.13(b)(1)(B)(i). The second is a catchall provision; if Defendant "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the other reasons described [in the provision's previous paragraphs] are similar in gravity to those [previous reasons]." *Id.* at (b)(5). The United States assists Defendant, pointing to another circumstance he might point to: "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* at (b)(1)(C). Because the record reflects that Defendant's situation does not correspond to any of these circumstances, the Court finds that neither extraordinary nor compelling reasons exist warranting a reduction of Defendant's sentence.

Defendant claims that he has "a severely shattered leg" and that orthopedic clinicians at FCI Florence "have told him that his case is too complex and that he will not receive the necessary surgeries while in BOP custody." **Def.'s Mot. Compassionate Release at 1–2**. This is belied by the record.

First, Defendant's documented medical history since arriving at FCI Florence shows that he is no longer suffering from an acute fracture, but rather a deformity to his tibia that is slowly degenerating his knee. **Gov't.'s Response, Ex. 2 at 158**. Clinicians at FCI Florence have indicated that this degeneration is "minimal" and "stable." ***Id.* at 141, 158**. Although his injury has become more painful, rising from 2/10 in August 2025 to 7/10 in April 2026, ***id.* at 44, 141**, there is no evidence in the record that Defendant suffers from an acute injury presenting serious risk to his health, undercutting Defendant's claim that he faces a risk of amputation, ***see*** **Def.'s Mot. Compassionate Release at 2**.

Second, and more importantly, the record shows that staff at FCI Florence are monitoring his condition and considering all possible treatment options. Defendant was seen within two weeks of arriving at FCI Florence, and his leg was x-rayed within three. **Gov't.'s Response, Ex. 2 at 73, 158**. At the time he described his pain as "dull," ***id.* at 44**, and clinicians recommended a treatment plan that centered around pain management, ***id.* at 73**. He was seen again for his leg on November 4, March 16, and April 7. ***Id.* at 141, 153**. As his pain has increased, providers at FCI Florence have indicated that he should be evaluated for surgery, even though the degenerative condition of his knee has remained stable. ***Id.* at 141**. These documented reports do not show that medical staff have told Defendant he will not get necessary care. It shows medical staff that are evaluating his leg, helping him manage his symptoms, and considering several treatment options.[4]

If FCI Florence medical staff determine that Defendant needs surgery, he will not be stuck in FCI Florence, like he claims. Defendant's current Care Level designation is 2 because medical

---

[4] Defendant also complains that the medical staff's delay in further evaluation after April 7 is itself an extraordinary and compelling reason justifying his release. **Def.'s Reply Mot. Compassionate Release, Doc. 34 at 1**. While the Court sympathizes with Defendant's frustration, there is no authority to support his claim that a several months' long delay justifies compassionate release.

staff are still evaluating whether he requires surgery. If they determine surgery is appropriate and his level is upgraded to 3 or 4, then the BOP will consider redesignating him to a facility that is capable of handling such a surgery. *See Care Level Classifications*, FEDERAL BUREAU OF PRISONS, at 5.

As for his hand, Defendant does not argue that he has not received the care he needs, and the record demonstrates he is receiving necessary care, having been evaluated by doctors with whom he agreed to a "conservative treatment" plan. **Gov't.'s Response, Ex. 2 at 145**. In short, he is getting the care he needs for injuries both to his leg and his hand, *see* U.S.S.G. § 1B1.13(b)(1)(C), injuries from which he is eventually expected to recover, *see id*. at (b)(1)(B)(i).

Finally, Defendant's status on the RDAP waitlist does not "substantially diminish [his] ability to provide self-care," because he is enrolled in Medication Assisted Treatment Plan, where he is being treated for his opioid use disorder. **Gov't.'s Response, Ex. 2 at 1, 5–6**. Defendant does not appear to dispute this. ***See generally*** **Def.'s Mot. Compassionate Release; Def.'s Reply Mot. Compassionate Release**.

Accordingly, the Court finds that Defendant has not demonstrated that there are extraordinary and compelling circumstances warranting his immediate release.

### III. Alternatively, weighing the § 3553(a) factors, the Court concludes that release is not appropriate

Even assuming there were extraordinary and compelling reasons justifying an early release, the Court concludes that release is not warranted under the applicable § 3553(a) factors.

Courts may not grant compassionate release without considering the § 3553(a) factors as part of their analysis. 18 U.S.C. § 3582(c)(1)(A); *United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021); USSG § 1B1.13(a). The § 3553(a) factors include:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553. The Court is not required to consider all the factors, only those applicable to the case at hand. *Maumau*, 993 F.3d at 831.

In this case, several factors apply. The Court incorporates herein the findings and reasoning it has already articulated at sentencing. *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018) (looking to district court's reasoning at sentencing in affirming order on sentencing reduction under § 3582(c)(2)). This underscores that the relevant § 3553(a) factors counsel against a sentence reduction, even assuming Defendant had met his burden to demonstrate extraordinary and compelling circumstances. These factors are addressed in turn.

**A. The Nature and Circumstances of the Defendant's Violent Offense Counsel Against Shortening His Sentence**

The nature of Defendant's offenses counsel towards denying his motion. Defendant did not commit a run-of-the-mill Felon in Possession of a Firearm and Ammunition offense. He absconded from his supervised release and was on the run for two weeks before he was eventually detained by the USMS. **Final PSR, Doc. 13 at ¶ 11**. Even after USMS located him at an Albuquerque hotel, he engaged in a standoff with U.S. Marshalls that lasted seven hours. ***Id.* at ¶ 20**. During this time, he discharged a firearm and made continued threats to kill law enforcement. ***Id.* at ¶ 13, 20**.

Such a violent and dangerous episode, where Defendant "created a substantial risk of death or serious bodily injury to another person," is good reason to maintain the length of Defendant's original sentence. ***Id.* at ¶ 21**.

**B. The Defendant's Criminal History Compels the Court to Maintain the Length of His Sentence in Order to Protect the Public.**

Defendant's heartfelt and sincere letter to the Court demonstrates "remorse and shame" for his "reprehensible, dangerous behavior during the [standoff with USMS].". **Doc. 32, Ex. 1 (Defendant's Letter) at 1**. The Court places great weight in Defendant's contrition. Nevertheless, his criminal history counsels denying the Motion to protect the public. Defendant has a long history of violent crimes predating his more recent Felon in Possession offenses, for which he is now in federal custody. **Final PSR, Doc. 13 at ¶ 19**. These offenses include two instances of Assault and Battery, Larceny, and Unlawful Taking of a Motor Vehicle. ***Id.*** Although Defendant may be remorseful for his conduct now, these recent, serious, and violent offenses—when considered in light of his very recent flee from federal custody and standoff with USMS—are evidence that a thirty-seven-month sentence remains appropriate, just as it was appropriate when it was first handed down.

Accordingly, after carefully considering the facts in the record and their relationship to the § 3553(a) factors, the Court concludes that the factors counsel against a reduced sentence.

**CONCLUSION**

Defendant is unable to show that there are extraordinary and compelling reasons warranting a reduction in his sentence. And his continued incarceration serves the purpose of his original sentence. The Court will therefore **DENY** Defendant's Motion for Compassionate Release filed in both cases identified in the caption.

It is **SO ORDERED**.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE